

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 2 9 2007
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| RABO AGRIFINANCE, INC. and AG ACCEPTANCE CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> TERRA XXI LTD., VEIGEL FARM PARTNERS, VEIGEL FARMS, INC., GRAIN CENTRAL STATION, INC., VEIGEL GRAIN COMPANY, ROBERT W. VEIGEL, ELLA MARIE VEIGEL, STEVE VEIGEL, and TERRA PARTNERS, <br><br> Defendants. | NO. 2:06-CV-153-J |

## OPINION

Plaintiffs have brought this in rem action to foreclose liens on certain farm equipment. The parties tried this case—2:06-CV-153-J—before the Court. They did so back to back with 2:06-CV-272-J, a related case tried before the Court. The parties have stipulated that the Court may consider 2:06-CV-272-J's evidence as being evidence in 2:06-CV-153-J. They have also stipulated that the Court may consider 2:06-CV-153-J's evidence as being evidence in 2:06-CV-272-J.

### I. BACKGROUND FACTS[1]

Ag Services of America, Inc. loaned money to Veigel Farm Partners, Terra XXI, Ltd., and Grain Central Station, Inc. in the late 1990s. Grain Central Station does business as Veigel Grain Company. Robert Veigel, Steve Veigel, Veigel Farms, Inc., Grain Central Station, and

---

[1] The background facts are either stipulated or undisputed facts.

Terra XXI guaranteed the debt. As security, Robert Veigel, Steve Veigel, Veigel Farms, Grain Central Station, Veigel Farm Partners, and Terra XXI granted Ag Services of America security interests in equipment. This collateral includes an irrigation system.

Circle M Irrigation financed Veigel Farm Partners' purchase of the irrigation system. It secured repayment with a purchase-money security interest in the irrigation system. Diversified Financial Services, Inc. acquired the debt and the purchase-money security interest. Robert Veigel executed an Unconditional Guaranty of the debt. Veigel Farm Partners defaulted on the debt. Diversified Financial Services sued Veigel Farm Partners, Terra XXI, Robert Veigel, and others in state court. In the suit, Robert Veigel stipulated that he had unconditionally guaranteed the debt. Diversified Financial Services got a judgment in state court against Veigel Farm Partners, Terra XXI, Robert Veigel, and others on May 22, 2000. The judgment was for $537,362.04. The judgment itself did not provide that it was being entered against Robert Veigel in his capacity as a guarantor; nor did it otherwise distinguish the nature of the judgment being entered. Diversified Financial Services filed an abstract of judgment in Deaf Smith County, Texas on June 5, 2000.

Veigel Farm Partners filed for bankruptcy on August 22, 2000; Terra XXI did so on September 1, 2000. Each debtor's confirmed plan allowed Ag Service of America's claim for the debt owed for the loans. Liens on all equipment owned by the debtors, as well as a second lien on Terra XXI's real property in Deaf Smith County, secured Ag Service of America's allowed claim in each bankruptcy. Veigel Farm Partners and Terra XXI owed Ag Services of America $1,621,550 under the plans and agreed orders. The three parties entered into a settlement agreement on October 20, 2002 that reduced this amount to $1,500,000. Plaintiffs acquired the debt and liens from Ag Services of America. The guarantors ratified their

guarantees. Terra XXI and Veigel Farm Partners defaulted on the debt. Ag Acceptance Corporation foreclosed the second lien on the real property in Deaf Smith County. It bought the real property—subject to a prior lien of approximately $2,950,000—for $20,000 at a foreclosure sale on September 2, 2003. Plaintiffs credited this to the debt.

Veigel Farm Partners' confirmed plan also allowed Diversified Financial Services' claim for the judgment of $537,362.04. The allowed claim was secured by, among other things, a first lien on the irrigation system. Diversified Financial Services assigned the judgment and first lien to Ag Acceptance Corporation on November 24, 2003. Robert Veigel paid the judgment on June 30, 2006. Plaintiffs received this payment. Robert Veigel then filed, in the state court where Diversified Financial Services got the judgment, a notice that he claimed a right of contribution "from the other Defendants." This notice set forth a claim to "the benefit of the judgment and all related abstracts of judgment of record to enforce that contribution pursuant to Tex. Bus & Com. Code Chapter 34 and other applicable state law." Robert Veigel assigned the judgment and associated rights to Terra Partners.

## II. CONTENTIONS OF THE PARTIES

Plaintiffs have brought this in rem action to foreclose liens on the equipment. They seek an order permitting foreclosure on the equipment listed in the security agreements or listed on an inventory of the equipment located on certain real property. They also seek a declaratory judgment that certain parts which compose the irrigation system are fixtures and that Terra Partners did not get a right of subrogation in these parts when Robert Veigel assigned the judgment.

Defendants contend that Plaintiffs lost their security interest in the equipment because the statute of limitations ran on the claim for a deficiency. They contend that res judicata bars the

claim for judicial foreclosure because claims for a deficiency and judicial foreclosure were compulsory counterclaims in a prior case. They contend that Plaintiffs may not foreclose on the parts of the irrigation system that Terra Partners bought. They contend that Robert Veigel's assignment subrogated Terra Partners to Diversified Financial Services' purchase-money security interest in the irrigation system. And they contend that the parts composing the irrigation system are not fixtures.

## III. FINDINGS OF FACT

1. Any finding of fact that is deemed to be wholly or partly a conclusion of law will be a conclusion of law.

2. The Court incorporates Section I, "Background Facts," into these findings of fact.

### A. STIPULATED FACTS
(PARAGRAPHS 3 THROUGH 15 COMPRISE THE PARTIES' STIPULATIONS)

3. All of the parties to this action have asserted claims for attorneys' fees. The parties have stipulated that these claims will be submitted to the Court on affidavit after the Court determines who prevails in this action and whether attorneys' fees will be awarded.

4. Defendant, Terra Partners, is a Texas general partnership consisting of four corporations. Those corporations are Williams & Veigel, Inc., Burnett & Veigel, Inc., Kirk & Veigel, Inc. and Massey, Kirk & Veigel, Inc.

5. Ag Services of America, Inc. provided the following loans to various Defendants for the purpose of conducting farming operations in Deaf Smith County: (1) March 20, 1997 promissory note (as supplemented by the Agreement to Supplement Master Note dated May 18, 1997), (2) May 8, 1998 promissory note, and (3) May 20, 1998 promissory note.

6. Veigel Farm Partners filed for bankruptcy protection and reorganization on or about August 22, 2000 and Terra XXI filed for bankruptcy protection on or about September 1, 2000.

According to the December 10, 2001 Agreed Orders and confirmed bankruptcy plans in both bankruptcies, the debt owed to Plaintiffs (or their predecessors) was $1,621,550 with interest accruing at the rate of 8.5% per annum.

7. Terra XXI and Veigel Farm Partners sued Plaintiffs (or their predecessors) in the course of the bankruptcy proceeding. The lawsuit was settled on or about October 20, 2002. As a result, the amount of debt owed to Plaintiffs by Terra XXI and Veigel Farm Partners was reduced to $1,500,000 on or about October 20, 2002. Defendants who had previously given guarantees ratified those prior guarantees on August 14, 2003.

8. In 2003, Terra XXI and Veigel Farm Partners defaulted on the debt owed to Plaintiffs. As a result, a foreclosure sale on Plaintiffs' Ag Acceptance Corporation lien position in certain real property located in Deaf Smith County, Texas occurred on September 2, 2003. The foreclosure sale on Ag Acceptance Corporation's lien position generated $20,000 in proceeds that were credited to the debt owed to Plaintiffs.

9. In the spring and summer of 2006, Plaintiffs attempted to take possession of the collateral. Specifically, on May 26, 2006, Plaintiffs notified the Veigels by letter from Mr. Tom Riney, counsel for Plaintiffs, that they intended to take possession of collateral that secured repayment of the debt and requested that the Veigels assemble the collateral at a certain location for inspection and for repossession on June 9, 2006. Plaintiffs asked the Veigels to notify Plaintiffs by 5:00 p.m. on June 2, 2006 as to whether they were going to comply with the request. Plaintiffs' letter also stated that in case the Veigels failed to provide a written notice of their intent to comply by the deadline set in the letter, the Veigels would be presumed to have refused to cooperate with the orderly repossession of the collateral. Defendants did not respond to Plaintiffs' May 26, 2006 request.

10. On June 6, 2006, counsel for Plaintiffs sent counsel for Defendants a letter notifying him of Plaintiffs' intention of seeking a temporary restraining order and again seeking to schedule an orderly disposition of the collateral.

11. On or around October 23, 2006, Plaintiff Ag Acceptance Corporation took possession of the real property on which some of the collateral is located pursuant to a writ of possession issued by the Deaf Smith County Clerk.

12. There are hundreds of pieces of equipment and machinery located on the property. Plaintiffs hired a third party, Mr. Chris Cabbiness of C&W Equipment, to conduct an inventory of all machinery and equipment located on the property. The inventory was conducted from October 31, 2006 through November 2, 2006. All Defendants, or their representatives, were given the opportunity to be present during the inventory.

13. On or about May 22, 2000, a judgment was entered by the 222nd District Court in and for Deaf Smith County, Texas, in favor of Plaintiff Diversified Financial Services, Inc., against Defendants Veigel Farm Partners, Veigel Cattle Company, Bob Veigel, Inc., Steve Veigel, Inc., Veigel-Kirk, Inc., Robert W. Veigel, Ella Marie Veigel, and Terra XXI, Ltd., in Cause No. CI-99G-078, in the 222nd Judicial District Court in and for Deaf Smith County, Texas, in the principal amount of $537,362.04.

14. On June 5, 2005, Diversified Financial Services filed an abstract of judgment in Deaf Smith County. On June 30, 2006, Robert W. Veigel paid off the judgment in full for $551,052.21. Plaintiffs received such payment. On September 11, 2006, Robert W. Veigel filed in the records of the Clerk of this Court in Cause No. CI-99G-078, in the 222nd Judicial District Court in and for Deaf Smith County, a notice to the District Clerk stating that on June 30, 2006, Robert W. Veigel paid $551,052.21 for the benefit of Rabo Agrifinance, Inc., as successor in

interest to the Plaintiff "in full satisfaction of the judgment and the Judgment was then fully satisfied of record by Plaintiff." The notice states further that Robert W. Veigel claims a right to contribution "from the other Defendants" to the extent of the amount paid, plus interest, reasonable attorneys' fees, and costs, and declares that Robert W. Veigel claims "the benefit of the Judgment and all related Abstracts of Judgment of record to enforce that contribution pursuant to Tex. Bus. & Com. Code Chapter 34 and other applicable state law." On November 6, 2006, an Assignment of Judgment from Robert W. Veigel to Terra Partners was recorded in the Deaf Smith County Records.

15. Foreclosure on the land in Deaf Smith County occurred on September 2, 2003. Plaintiffs filed suit in Case No. 2:05-CV-243-J in this Court on September 1, 2005. Notice of Lawsuit and Request for Waiver in Case 2:05-CV-243-J was executed by Plaintiffs' attorney, Cliff Walston, on September 29, 2005. Summons was issued by the District Clerk in Case No. 2:05-CV-243-J on November 3, 2005. Service on all Defendants was completed by November 12, 2005 and November 15, 2005 by personal service in Case No. 2:05-CV-243-J. In the present case—2:06-CV-153-J—suit was filed in the 222nd State Court, Deaf Smith County, Texas, on June 7, 2006 and then removed here on June 20, 2006. Service was completed on June 20, 2006 by Defendants' answer to suit.

### B. DEBT AND SECURITY INTERESTS

16. As security for Ag Services of America's loans to Veigel Farm Partners, Terra XXI and Grain Central Station, the defendants Robert Veigel, Steve Veigel, Veigel Farms, Grain Central Station, Veigel Farm Partners, and Terra XXI granted Ag Services of America security interests in equipment.

17. An exhibit attached to the Agricultural Security Agreements that Ag Services of America entered into with Robert Veigel, Steve Veigel, Veigel Farms, Grain Central Station, and Veigel Farm Partners lists some of the collateral. The exhibit provides that the collateral includes the equipment listed, but is not limited to that equipment. It describes the collateral as including "[a]ll of Debtor's equipment and motorized vehicles and/or trailers, whether or not required to be licensed or registered, whether now owned or hereafter acquired, including but not limited to machinery and tools, together with all accessories, parts, accessions and repairs or hereafter attached or affixed thereto."

18. An exhibit attached to the Agricultural Security Agreement that Ag Services of America entered into with Terra XXI also lists some collateral. It describes the collateral as including "[a]ll irrigation and drainage equipment, including moveable equipment necessary to operate the system, which is now or hereafter installed on, affixed to, placed upon, or used in connection with Sections 21, 22, 39, 40, 42, 59, 60, and 62, Block K-4; All in Deaf Smith County, Texas, and all replacements thereof, additions thereto, and substitutions therefore, including but not limited to, all wells, motors and pipe" and the property listed.

19. Terra XXI does not claim an interest in any equipment.

20. Plaintiffs' Exhibit 42B contains an inventory of equipment and personal property located on real property in Hereford, Texas. Steve and Robert Veigel initialed the items that they claim are owned by Veigel Farm Partners, Terra XXI, Terra Partners, Veigel Grain Company, Steve Veigel, or Robert Veigel. The initials "VFP" mean that Veigel Farm Partners owns the item. "XXI" means that Terra XXI owns the item. "TP" means that Terra Partners owns the item. "VFP/TP" means that Veigel Farm Partners owns the item and that Terra Partners claims a

subrogated interest in it. "VG" means that Veigel Grain Company owns the item. "BV" means that Robert Veigel owns the item.

21. The Court finds that Veigel Farm Partners owns the item in Plaintiffs' Exhibit 42B bearing the initials "SV."

22. Some items listed in Plaintiffs' Exhibit 42B bears the notation "XXI Fixture," "Fixture XXI," "Fixture," "Fixture BV + TP," "Fixture XXI or BV + Heirs," or "Fixture XXI/BV and Heirs." Steve and Robert Veigel claim that these items are fixtures on the real property in Hereford, Texas.

23. Veigel Farm Partners and Terra XXI filed for bankruptcy in 2000. Each debtor's confirmed plan allowed Ag Service of America's claim for the debt under the loans and secured the debt with a lien on all equipment owned by the debtors.

24. Veigel Farm Partners and Terra XXI owed Ag Services of America $1,621,550 under the bankruptcies' plans and agreed orders. A settlement agreement between the parties reduced this debt to $1,500,000. Veigel Farm Partners and Terra XXI have defaulted on the debt. As of June 30, 2007, the outstanding balance on the debt was $1,929,083.91. This amount includes a credit for the $20,000 that Ag Acceptance Corporation paid at a foreclosure sale for the real property in Deaf Smith County. On the date of the foreclosure sale, the fair market value of the real property was $2,897,000. Ag Acceptance Corporation took the real property subject to a prior lien worth approximately $2,950,000.

25. Plaintiffs have acquired the debt and the security interests. The security interests cover the equipment listed in the security agreements' exhibits. The security interests also cover the equipment, listed in Plaintiffs' Exhibit 42B, that bear the initials "XXI," "VFP," "VFP/TP," "SV," "VG," or "BV," except that the security interests do not cover Robert Veigel's 3 antique

street lights, 2 old youth saddles, antique John Deere "D" Tractor or antique wooden carpenter's box, none of which is equipment.

## C. STATUTE OF LIMITATIONS

26. Plaintiffs filed suit in 2:05-CV-243-J to collect the deficiency remaining after the foreclosure sale of the real property in Deaf Smith County. They filed the suit one day before two years after the foreclosure sale.

27. Seventy-two days after filing suit in 2:05-CV-243-J, Plaintiffs served Robert Veigel and various entities with summons. Seventy-five days after filing suit, they served Steve Veigel with summons. Plaintiffs used diligence in effecting service in 2:05-CV-243-J, using the degree of diligence that an ordinarily prudent person would have used under the same or similar circumstances.

## D. RES JUDICATA

28. Terra XXI, Veigel Farm Partners, Terra Partners, Veigel Farms, Inc., Veigel Cattle Company, Robert Veigel, Ella Marie Veigel, and Grain Central Station, d/b/a Veigel Grain Company, filed a First Supplemental Original Petition in the 222nd District Court for Deaf Smith County on March 14, 2004. Sometime thereafter, Steve Veigel joined the case as a plaintiff. Ag Acceptance Corporation, Ag Services of America, and Rabo Ag Services were the case's defendants.

29. Ag Services of America and Rabo Ag Services are the predecessors in interest to Rabo Agrifinance.

30. Terra XXI, Veigel Farm Partners, and the others brought a claim for fraud. They brought a claim for breach of contract. They brought claims under the Bank Holding Company Act. They brought a claim to enjoin an action for forcible detainer that Ag Acceptance Corporation

had filed against the real property in Deaf Smith County. They challenged the validity of the deed of trust through which Ag Acceptance Corporation acquired title to that real property. And they challenged the validity of the notes secured by the deed of the trust and by the equipment on which Plaintiffs seek to foreclose in this case.

31. Ag Acceptance Corporation, Ag Services of America, and Rabo Ag Services brought a counterclaim for attorney's fees, alleging that Terra XXI, Veigel Farm Partners, and the others breached the bankruptcies' agreed orders and settlement agreements by bringing the claim to enjoin their rights concerning the foreclosure on the real property.

32. Ag Acceptance Corporation, Ag Services of America, and Rabo Ag Services voluntarily moved to nonsuit this counterclaim without prejudice. The state court granted the motion on March 5, 2007.

33. The state court granted summary judgment against some of the claims that Terra XXI, Veigel Farm Partners, and the others brought. In April of 2007, a jury returned a verdict against their remaining claims.

### E. SUBROGATION

34. Subrogating Terra Partners to the first lien on the irrigation system will prejudice Plaintiffs. It will limit the extent to which the irrigation system can satisfy the debt at issue in this case.

### F. FIXTURES

35. The irrigation system's pumps, underground pipes, and underground electrical lines are fixtures.

36. The pieces of equipment in Plaintiffs' Exhibit 42B that bear the notation "XXI Fixture," "Fixture XXI," "Fixture," "Fixture BV + TP," "Fixture XXI or BV + Heirs," or "Fixture XXI/BV and Heirs" are fixtures.

## IV. CONCLUSIONS OF LAW

1. Any conclusion of law that is deemed to be wholly or partly a finding of fact will be a finding of fact.

2. The Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332.

3. The Court has personal jurisdiction over the parties.

4. The Court may grant a declaratory judgment in this case under the Federal Declaratory Judgments Act. *See* 28 U.S.C.A. § 2201(a) (2007).

### A. STATUTE OF LIMITATIONS

5. If the statute of limitations bars collection of a debt, then an action to foreclose on the debt's security is also barred. *McBryde v. Curry*, 914 S.W.2d 616, 619 (Tex. App.—Texarkana 1995, writ denied). A creditor must sue for the deficiency, remaining after a foreclosure sale of real property, within two years of the sale. Tex. Prop. Code. Ann. § 51.003(a) (Vernon 2007). To keep this period of limitations from running on a claim for the deficiency, a creditor not only must file suit within two years of the sale but also must effect service diligently. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). If a creditor sues within the two-year period and serves the debtor after the period has expired, the date of service relates back to the date of filing as long as the creditor effected service diligently. *Id.*

6. A plaintiff need not use the highest degree of diligence in effecting service. *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 698-99 (Tex. App—Houston [14th Dist.] 2006, no pet.). He must

use the degree of diligence that an ordinarily prudent person would have used under the same or similar circumstances. *Id.*

7. Because Plaintiffs filed a claim for a deficiency 2:05-CV-243-J within two years of the foreclosure sale and used diligence in serving the defendants, the statute of limitations does not bar their claim for a deficiency. As such, their claim in this case for foreclosure on the equipment is also not barred.

## B. RES JUDICATA

8. Underlying the contention that res judicata bars the claim for judicial foreclosure is the rule that Plaintiffs may judicially foreclose on the equipment only upon proving, among other things, that Defendants owe a debt. *See* Tex. Bus. Com. Code Ann. § 9.601(a) (Vernon 2007). Defendants contend that if res judicata bars Plaintiffs from suing for the deficiency—the relevant debt here—then they may not foreclose on the equipment.

9. Res judicata precludes a party from asserting a claim in a new case that was a compulsory counterclaim in a prior case. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). If a debtor sues a creditor to challenge a secured debt's validity, counterclaims to recover the debt or to foreclose on the collateral are not compulsory as long as the creditor has a contractual right to pursue a nonjudicial foreclosure. *Douglas v. NCNB Texas Nat. Bank*, 979 F.2d 1128, 1130 (5th Cir. 1991).

10. Filing a counterclaim in state court to recover the deficiency or to foreclose on the equipment was not compulsory for Plaintiffs. Although Defendants challenged the validity of the secured debt in the state-court case, Plaintiffs had a contractual right to pursue nonjudicial foreclosure on the equipment.

11. Res judicata also precludes parties from relitigating claims that a competent tribunal has finally adjudicated or that arose from the same subject matter and should have been litigated in the prior case. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). A party pleading it as a defense must prove that a court of competent jurisdiction entered a final judgment on the merits in a prior case, that the parties in the prior case and the second case are identical or in privity, and that the second case is based on the same claims that were raised or should have been raised in the prior case. *Id.*

12. This defense bars relitigation of a plaintiff's claims; it does not bar litigation of permissive counterclaims that a defendant chose not to raise in the prior case. *Pinebrook Properties, Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied). But if the defendant does raise a counterclaim, putting himself in the posture of a plaintiff, res judicata will bar him in a future case from bringing claims that arose from the same subject matter as the counterclaim. *Id.* at 496-98; *see Getty Oil Co. v. Ins. Co. of North America*, 845 S.W.2d 794, 800 (Tex. 1992) (holding that cross-claimant acts as a plaintiff for purposes of res judicata and must assert all claims against the cross-defendant that arise from the original cross-claim's subject matter). Courts use a transactional test to decide whether claims raised in a new case arose from the same subject matter as the prior case's counterclaim. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630-31 (Tex. 1993). Under this test, courts give "weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* at 631.

13. Claims for a deficiency and for foreclosure on the equipment did not arise from the same subject matter as the counterclaim for attorney's fees. The counterclaim involved a narrow issue and a narrow request for relief: whether Terra XXI, Veigel Farm Partners and the others breached a sentence in the agreed orders, giving Rabo Agrifinance, Ag Acceptance Corporation, and Ag Services of America a right to attorney's fees. Claims for a deficiency and for foreclosure on the equipment involve much broader issues and claims for relief. They involve issues not only about the agreed orders and settlement agreements but also about the promissory notes, the security agreements, the fixtures, the debt remaining after Ag Acceptance Corporation bought the real property in Deaf Smith County, the fair market value of that real property, the credits owed for CPR checks, and so forth. In short, they involve the entire ten-year relationship of the parties.

14. Because claims for deficiency or foreclosure on the equipment were neither compulsory counterclaims in the state-court case nor claims that arose from the same subject matter as the counterclaim for attorney's fees, res judicata does not bar Plaintiffs from bringing the claim for foreclosure in this case.

15. Even if the Court were to conclude that those claims arose from the same subject matter as the nonsuited counterclaim for attorney's fees, which was brought because of the filing of the case in state court, res judicata does not bar what were permissive counterclaims. Res judicata does not bar a claim that a party voluntarily nonsuited without prejudice in a prior case, as Plaintiffs did with the claim for attorney's fees. *Welch v. Hrabar*, 110 S.W.3d 601, 608 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Nonsuiting the claim has the same effect as not bringing the claim. *Transamerica Ins. Co. v. Frost Nat. Bank of San Antonio*, 501 S.W.2d 418, 422 (Tex. Civ. App.—Beaumont 1973, writ ref'd n.r.e.) (quoting *Crofts v. Court of Civil*

*Appeals*, 362 S.W.2d 101, 104 (Tex.1962) ("[A] dismissal . . . merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought.")). Hence, res judicata will not bar the party from bringing a claim in a future case that was a permissive counterclaim in the case where the nonsuit occurred. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). As discussed, the claims for deficiency and foreclosure were permissive counterclaims in the state case.

### C. SUBROGATION

16. "A judgment is not discharged by a surety's payment of it in whole or part if the payment is compelled or, if voluntarily made, is applied to the judgment because of the suretyship relation." Tex. Bus. & Com. Code Ann. § 34.04(a) (Vernon 2007). Paying the judgment subrogates the surety to "the judgment creditor's rights under the judgment." *Id.* § 34.04(b). The surety may execute on the judgment against the principal's property. *Id.* § 34.04(b)(1). "Surety" includes a guarantor whose status stems from an express contract. *Id.* § 34.01. A stipulation between parties constitutes a contract. *Fourticq v. Fireman's Fund Ins. Co.*, 679 S.W.2d 562, 566 (Tex. App.—Dallas 1984, no writ). A stipulation is an agreement, admission, or concession that parties make about an issue in a judicial proceeding. *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998).

17. Plaintiffs argue that Robert Veigel did not get a right to subrogation under section 34.04 because the issue of suretyship was neither pleaded nor adjudicated in Diversified Financial Services' suit. But the case that they cite for support—*Reed v. Buck*—did not involve a situation like that here. *See* 370 S.W.2d 867, 872 (Tex. 1963) (holding that if a note's co-maker is actually a guarantor and wants to claim that status as a defense to a creditor's suit on the note, then he must plead this and join the primary obligor as a defendant). It did not involve issues

about becoming a guarantor or about acquiring a right of subrogation; subrogation was not even mentioned.

18. The Unconditional Guaranty and the stipulation in Diversified Financial Services' suit established Robert Veigel's status as a guarantor. That said, paying the judgment as a guarantor and assigning the associated rights to Terra Partners has not created a subrogated interest in the irrigation system.

19. A surety may not acquire a right of subrogation that will prejudice a creditor. *Med Ctr. Bank v. Fleetwood*, 854 S.W.2d 278, 285-88 (Tex. App.—Austin 1993, writ denied). If the collateral for the obligation paid by the surety also secures the principal debtor's other obligations to the creditor, then the surety may not acquire a subrogated interest in the collateral till someone satisfies the other obligations. *See Cason v. Westfall*, 18 S.W. 668, 670 (Tex. 1892); Restatement (First) of Security § 141(b) & cmt. e (2007); Restatement (Third) of Suretyship & Guaranty § 27 cmt. b (2007).

20. As the Court has found, subrogating Terra Partners to the first lien on the irrigation system will prejudice Plaintiffs. *See, e.g., Med Ctr. Bank v. Fleetwood*, 854 S.W.2d at 286 ("In a partial-payment situation, the prior creditor is prejudiced by a subsequent creditor assuming a position equal or superior to the lien securing the remaining debt to the prior creditor."); Restatement (First) of Security § 141 illus. 10, 12. At the time that Robert Veigel paid the judgment as a guarantor, the irrigation system secured two obligations that Veigel Farm Partners owed to Plaintiffs: (1) the obligation imposed by the judgment, and (2) the obligation imposed by the debt at issue here. Granting Terra Partners a right of subrogation will limit the extent to which the irrigation system can satisfy this second obligation. The obligation equaled $1,929,083.91 as of June 30, 2007 and has not yet been satisfied.

D. FIXTURES

21. A fixture is personal property that loses its separate character and becomes part of the realty by being "so attached to the realty that it cannot be removed without materially damaging the property." *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d 629, 633 (Tex. App.—El Paso 1992, no writ). Courts consider three factors in deciding whether personal property has become a fixture: (1) the intent of the party who annexed the personal property to the realty; (2) the mode and sufficiency of annexation, either real or constructive; (3) the adaptation of the article to the realty's use or purpose. *See Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex. 1985). The first factor, intent, has the most bearing on whether personal property has become a fixture. *See id.* The second and third factors are evidence of intent. *See id.*

22. Given these factors, the irrigation system's pumps, underground pipes, and underground electrical lines are fixtures.

23. The pieces of equipment in Plaintiffs' Exhibit 42B that bear the notation "XXI Fixture," "Fixture XXI," "Fixture," "Fixture BV + TP," "Fixture XXI or BV + Heirs," or "Fixture XXI/BV and Heirs" are also fixtures.

E. JUDICIAL FORECLOSURE

24. After default, a secured party may seek judicial foreclosure on the collateral. Tex. Bus. Com. Code Ann. § 9.601(a) (Vernon 2007). Plaintiffs may judicially foreclose on the equipment if they prove that Defendants have defaulted on a debt and that they have a valid security interest in the equipment.

25. Defendants have defaulted on a debt owed to Plaintiffs. As of June 30, 2007, this debt equaled $1,929,083.91. Plaintiffs have a valid security interest in the equipment securing the debt. This includes the equipment listed in the security agreements' exhibits. This also includes

the equipment, listed in Plaintiffs' Exhibit 42B, that bear the initials "XXI," "VFP," "VFP/TP," "SV," "VG," or "BV," except that this does not include Robert Veigel's 3 antique street lights, 2 old youth saddles, antique John Deere "D" Tractor or antique wooden carpenter's box, none of which is equipment.

26. Consequently, Plaintiffs may foreclose on the equipment listed in the security agreements' exhibits and on the equipment, listed in Plaintiffs' Exhibit 42B, that bears the initials "XXI," "VFP," "VFP/TP," "SV," or "VG." They may also foreclose on the equipment in Plaintiffs' Exhibit 42B that bears the initials "BV," except that they may not foreclose on the 3 antique street lights, the 2 old youth saddles, the antique John Deere "D" Tractor or the antique wooden carpenter's box, none of which is equipment.

27. Attached to this Opinion are (1) the security agreements' exhibits that list the equipment and (2) Plaintiffs' Exhibit 42B. The Court incorporates these documents as a part of this Opinion.

## V. CONCLUSION

Accordingly, Plaintiffs are entitled to the following judgment: (1) they may foreclose on the equipment listed in the security agreements' exhibits; (2) they may foreclose on the equipment, listed in Plaintiffs' Exhibit 42B, that bears the initials "XXI," "VFP," "VFP/TP," "SV," "VG," or "BV," except that they may not foreclose on the 3 antique street lights, the 2 old youth saddles, the antique John Deere "D" Tractor or the antique wooden carpenter's box, none of which is equipment; (3) the pieces of equipment in Plaintiffs' Exhibit 42B that bear the notation "XXI Fixture," "Fixture XXI," "Fixture," "Fixture BV + TP," "Fixture XXI or BV + Heirs," or "Fixture XXI/BV and Heirs" are fixtures; (4) the irrigation system's pumps,

underground pipes, and underground electrical lines are fixtures; and (5) Terra Partners does not have a subrogated interest in the irrigation system.

IT IS SO ORDERED.

Signed this 29t day of August 2007.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE